IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **PAMALON ROLLINS,** | * | |
| **SHEMEDREA JOHNSON,** | | |
| **RENODA THOMAS and** | * | |
| **TAMARA WARD** | | |
| | * | |
| **Plaintiffs,** | | |
| | * | CASE NO. 2:09-cv-636-WHA-SRW |
| **v.** | | |
| | * | |
| **ALABAMA COMMUNITY** | | COLLECTIVE/CLASS ACTION |
| **COLLEGE SYSTEM, et al.** | * | |
| | | |
| **Defendants.** | * | |

### PLAINTIFFS' MEMORANDUM IN SUPPORT FOR CONDITIONAL CERTIFICATION AND AUTHORIZATION TO SEND NOTICE PURSUANT TO THE EQUAL PAY ACT

**COME NOW** Plaintiffs, in the above-styled lawsuit, and respectfully request this Court enter an Order of conditional certification and allowing notice be sent to all female individuals employed under Defendants' salary schedules during the last three years pursuant to the Equal Pay Act ("EPA"). In support of said Motion, Plaintiffs state the following:

1. This case was initially filed on May 29, 2009, in the Circuit Court of Montgomery County, Alabama. On July 8, 2009, Defendants sought removal of this action to this Federal District Court pursuant to 28 U.S.C. §1441(b), since the case was brought pursuant to the Equal Pay Act of 1963, as amended, 29 U.S.C. §206(d), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, Title IX, 42 U.S.C. §1983, and 42 U.S.C. §1981.

2. Plaintiffs bring claims of pay discrimination as a collective action under the Equal Pay Act of 1963, as amended, 29 U.S.C. 206(d) on behalf of all female employees paid pursuant to

1

the Defendants' salary schedules C,D, and E. This is a sex discrimination case brought under the Equal Pay Act provisions of the Fair Labor Standards Act ("FLSA"). Therefore, Plaintiffs requests the Court provide conditional notice of a collective action under 216(b) of the FLSA.

3.      The FLSA authorizes employees to bring an action individually and on behalf of others similarly situated. *See* 29 U.S.C. § 216(b).  The FLSA provides, in part, that:

> An action to recover the liability [for unpaid wages and overtime] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other similarly situated. No employee shall be a party Plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*See id.*

4.      The requirements for pursuing a §216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure. *See e.g. LaChapelle v. Owens Illinois, Inc.,* 513 F.2d 286, 289 (5th Cir. 1975)(Rule 23 and §216(b) actions are "mutually exclusive and irreconcilable"). While a class action binds all class members who do not "opt-out," a collective action under the FLSA only binds those employees who "opt-in." The "opt-in" requirement is also borne out of Section 216(b) of the FLSA, which provides: "no employee shall become a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Case law, recognizing a fundamental difference between Rule 23 class actions and Section 216(b) collective actions, has also interpreted the statutory sections as requiring all plaintiffs in a collective action under the FLSA to file written consents for statute of limitations purposes. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996); *O'Connell v. Champion Int'l Corp.*, 812 F.2nd 393 at

394 (8th Cir. 1987); *La Chapelle*, 513 F.2nd at 288, 289 (5th Cir. 1975). This is the exact opposite of traditional Rule 23 class actions in which a Plaintiff initiating a class action automatically represents every member of the class that has not expressly "opted-out."

     5.     Federal courts have used varying standards to determine whether potential opt-in plaintiffs are "similarly situated" under § 216(b). The Eleventh Circuit uses the two-step analysis adopted in *Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208 (11th Cir. 2001). *Hipp* outlines a two-tiered procedure that district courts should use in certifying collective actions under § 216(b), stating as follows: The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision - usually based only on the pleadings and any affidavits which have been submitted - whether notice of the action should be given to potential class members. At this early stage of litigation, the Court does not reach the merits of the plaintiff's claims. *See Grayson v. K Mart*, 79 F.3d 1086, 1096 (11th Cir. 1996) (noting that the "similarly situated" standard is considerably less stringent than Rule 23(b)(3) class action standards). Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. Since *Hipp*, the district courts in the Eleventh Circuit have utilized the two-tiered approach described above. *See, e.g.*, *Reed v. Mobile County Sch. Sys.*, 246 F. Supp. 2d 1227, 1230 (S.D. Ala. 2003); *Barron v. Henry County Sch. Sys.*, 242 F. Supp. 2d 1096, 1102 (M.D. Ala. 2003); *Stone v. First*

*Union Corp.*, 216 F.R.D. 540, 2003 WL 21850449, *3-5 (S.D. Fla. 2003). The instant Motion only addresses the first tier of the analysis (the "notice stage"), in which the district court makes an initial assessment whether notice should be sent to potential plaintiffs. *See Hipp*, 252 F.3d at 1218 (11th Cir 2001).

      6.      For a collective action to be created, an employee need only show that she is suing her employer for herself and on behalf of other employees "similarly situated." Plaintiffs need show only "that their positions are similar, not identical" to the positions held by the putative class members. *Sperling v. Hoffman-LaRoche*, 118 F.R.D. 392, 407 (D.N.J. 1988), *aff'd in part and appeal dismissed in part*, 862 F.2d 439 (3rd Cir. 1988), *aff'd Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Plaintiffs have shown there are questions of law or fact common to Defendants' female employees and the claims of the Named Plaintiffs in the instant matter. Indeed, Plaintiffs' claims are typical of the claims of the other females employed under the Alabama Community College System/Department of Postsecondary Education[1] salary schedules. *See* 29 U.S.C. § 216(b); *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991). There is no requirement of "strict symmetry" or "absolute identity"; rather potential class members must meet only a "sufficiently similar" standard. *Wilks v. Pep Boys*, 2006 WL 2821700 at *3 (M.D. Tenn. 2006)("similarly situated does not mean identically situated"); *see also Glass v. IDS Financial Services, Inc.,* 778 F. Supp. 1029, 1081 (D. Minn. 1991) (an allegation that a single decision, policy or plan precipitated the challenged action was sufficient to define the class). Based upon the Complaint's allegations of centralized control of salary schedules and placement thereon,

---

[1] The Alabama Community College System and the Department of Postsecondary Education will be referred to collectively herein as "ACCS".

the demonstrated existence of opt-in Plaintiffs, and the undisputed application of Defendants' across-the-board pay policies and provisions, Plaintiffs have satisfied the applicable burden of persuasion that a colorable basis exists for determining that others similarly-situated to Named Plaintiff exist.

7.  Not only have Plaintiffs demonstrated a "reasonable basis" for their claim of class-wide discrimination through detailed allegations supported by declarations, but *Plaintiffs' expert report and summation* provides another avenue of evidence, albeit unnecessary at the lenient notice stage, showing that there is a single issue of disparate pay of females employed under ACCS with each claim bearing common facts of proof. The use of the data and statistical evidence for Plaintiffs and potential putative Plaintiffs demonstrates there is common issue applicable to all female employees of Defendants. The statistics presented in the expert's report shows an extreme pattern of gender discrimination that is substantial to all female ACCS employees. The evidence shows that not only are male ACCS employees more likely to receive increases in pay rates approved by the highly subjective and centralized pay-setting Postsecondary policies than it is for female ACCS employees, but that females as a whole are compensated at much lower salary rates than the male counterparts.

8.  The basic thrust of Plaintiffs' statistical evidence shows, that for the discovery period inclusive of six academic years from September 2004 through August 31, 2010, using years of service and education as factors for consideration, the following:

    - Female ACCS employees make less than men with the disparity being -$2,955 with the statistically significant standard deviation being -2.79.

    - It was also determined that the adverse disparity in pay for female employees at Trenholm was -$2,548 less than men.

*See Plaintiffs' Expert Report Updated,* attached as Exhibit C to Doc. 72.

  9. Defendants use an entirely subjective personnel process that operates to discriminate in pay against all female employees. As the expert's report shows, it is far more likely for male pay rate increases to be approved by the highly centralized pay-setting Postsecondary than it is for female counterparts.

  10. Due to the centralized and subjective decision-making, there are no records which allow decision makers to combine unspecified factors without keeping a record of the factors or their combination for a final decision. Due to the role of centralized pay settings and subjective assessments, significant statistical disparities are relevant to determining a class-wide impact. At a minimum, collective treatment is sought based on the common issue of whether Defendants' centralized employment practices and payments under the salary schedules are discriminatory in practice.

  11. All current Plaintiffs are female, and future Plaintiffs, per alleged class, will be female. All named Plaintiffs are currently full time employees of Defendant H. Council Trenholm State Technical College (hereinafter "Trenholm"). Trenholm is a two-year public community college under the supervision and control of the State Board of Education (hereinafter "State Board"), the Department of Postsecondary Education, and the Alabama Community College System (hereinafter the Department of Postsecondary Education and the Alabama Community College System will be referred to collectively as "ACCS"), through its former Chancellor Bradley Byrne and current Chancellor Frieda Hill. Plaintiffs have demonstrated that ACCS has implemented a pay policy that applies across-the-board to all two-year public community colleges.

  12. Plaintiff Rollins was hired by Trenholm in 2004 in the position of Administrative

Services Manager and was placed on C-3. Thereafter, the position was reorganized to Director of Human Resources and she remained on the C-3 salary schedule with no increase in salary. At the time of filing this lawsuit Plaintiff Rollins was making $56,560. (Doc. 72, Ex. D., Decl. of Rollins, ¶1).

13.     Plaintiff Johnson was hired by Defendant Trenholm in 2001 as the Director of Restricted Programs. She was placed on the C-3 salary schedule. At the time of filing of this lawsuit Plaintiff Johnson was making $66,691.00. (Doc. 72, Ex. D., Decl. of Johnson, ¶1).

14.     Both Plaintiff Johnson and Rollins have earned Master's Degrees. Plaintiff Johnson and Plaintiff Rollins are currently making less than males in comparable positions at Defendant Trenholm who have less experience and less seniority. (Doc. 72, Ex. D.)

15.     Michael Evans is the Retention Advisor/Public Information Officer at Defendant Trenholm. Upon information and belief, the level of skill required to do his job is equivalent to an admission's clerk. At the time of filing of this lawsuit, Evan was making $66,700 on the C-3 salary schedule which is more than Plaintiff Johnson and Plaintiff Rollins, and Evans continues to make more than Johnson and Rollins. (Doc. 72, Ex. D.)

16.     Gerald Horn was hired at Defendant Trenholm in June of 2008. Horn is the Project Director for the Department of Labor Automotive Manufacturing Grant. Horn was placed on the C-3 salary schedule and was making approximately $77,500.00 in 2009, more than Plaintiff Johnson and Plaintiff Rollins, who have both been at Defendant Trenholm longer than Horn. Horn's primary job duty is making sure that objectives of the grant are being met. Horn has no program management experience, nor does he have any budget experience or federal program experience, which is required and/or preferred for the position. Although Horn has to get Plaintiff Johnson's approval before he

conducts certain activities and before he spends any money through the Department of Labor Automotive, he is making more than Plaintiff Johnson. (Doc. 72, Ex. D.)

17.     Danny Perry was hired at Defendant Trenholm in 2008. Perry is the Project Director for Department of Labor Health Services. Perry's job requires that he have federal program management experience, which upon information and belief, Perry lacks. Perry is on the C-3 salary schedule and is making approximately $80,000, which is more than what Plaintiff Johnson and Plaintiff Rollins are making. Perry has to obtain approval from Plaintiff Johnson for any type of expenditures that relates to the grant for the Department. (Doc. 72, Ex. D.)

18.     Charles Harris is the Assistant Dean of Information Technology and Campus Security. Harris was originally placed on the C-2 salary schedule. When Harris obtained his position with Campus Security, he was placed on the C-1 salary schedule. Harris has no degrees or certifications in computer technology or information technology. Harris has a Bachelor's Degree in Physical Plant Maintenance. However, Harris is on a higher salary schedule and is currently making $86,325, which is significantly more than Plaintiff Johnson and Plaintiff Rollins who hold Master's Degrees in their respective positions. (Doc. 72, Ex. D.)

19.     Plaintiff Renoda Thomas was hired by Defendant Trenholm in August 2002 in the position of Accounts Receivable Clerk. Plaintiff Thomas has an Associate's Degree from Trenholm. (Doc. 72, Ex. D., Decl. of Thomas ¶1.) Plaintiff Thomas is approximately 42 years old. She was placed on the E salary schedule. In the fall of 2004, this position was reclassified to Payroll and Personnel Accountant by the Dean of Finance but the position remained on the E salary schedule. *Id*. In August of 2008, Plaintiff Thomas was offered the position of Operations Accountant on the C-3 Salary Schedule. (*Id*. at ¶3). Plaintiff Thomas was informed by Defendant Munnerlyn and her

supervisor that the position would only pay and was only budgeted for approximately $54,000. *Id*. Because Plaintiff Thomas was making more money in the position she currently held, she declined the offer. *Id*. In December of 2008, Defendant Munnerlyn hired William Merrill, for the position of Operations Accountant. (*Id*. at ¶4). Merrill was placed on the C-3 salary schedule at $70,000 per year, making much more than Plaintiff Thomas had been told the position would pay. *Id*. Plaintiff Thomas, as well as the other accountant, are paid on the E salary schedule, where the compensation is much less than on the C-3 salary schedule. *Id*. Merrill is the only accountant that is paid on the C-3 salary schedule. *Id*. More telling of discrimination, Plaintiff Thomas was offered the job for $54,000, and that was all that it was budgeted for, yet Merrill was offered the job at $70,000 per year.

20.     Plaintiff Tamara Ward has been employed by Defendant Trenholm since approximately May 2004 as an Instructor of Cosmetology. (Doc. 72, Ex. D., Decl. of Ward ¶1). Plaintiff Ward worked as a part-time Adjunct Instructor for approximately 8 years before she was hired as a full time Instructor on August 16, 2004, on the D1 Salary Schedule, Grade 1A. *Id.* For at least two years of the time that she was employed as an adjunct instructor, Plaintiff Ward was actually working full time to fill in for an instructor who was ill and to fill in for an instructor who had resigned. *Id.* Plaintiff Ward has over 14 years of teaching experience in the Cosmetology Department at Defendant Trenholm and she holds a Masters Degree in Public Management. *Id.* Plaintiff Ward is licensed through the Alabama Board of Cosmetology both as a certified Cosmetology Instructor and a Managing Cosmetologist. *Id.* Prior to being hired by Defendant Trenholm, Plaintiff Ward was a Salon Inspector for the Alabama Board of Cosmetology. *Id.* As a result of obtaining her Master's Degree, Plaintiff Ward requested a pay grade level increase on the D1 salary schedule, pursuant to Defendants' stated policies and practice. (*Id*. at ¶4.) Despite her

degrees, certifications and experience, and Defendants' stated policies, Plaintiff Ward was informed by Defendant Munnerlyn that she would have to take and pass the NOCTI Cosmetology Exam in order to receive an increase in pay. *Id.* After passing and completing the NOCTI exam in December of 2008 and providing all necessary documentation to Defendants on March 5, 2009, as instructed, Defendants failed or refused to provide an increase in pay grade level to Plaintiff Ward. *Id.* Male employees of Defendants are given pay grade level increases without having to follow similar requirements. (*Id.* at ¶5.) Male employees are paid at higher salary levels, higher salary schedules and higher pay grade levels than females, even though female employees are as qualified or better qualified than the male employees.

21. Females, including Plaintiffs, are not paid by Defendants for the performance of extra duties while males are paid stipends, bonuses or reclassified in order to compensate males at a higher rate than females, including Plaintiffs.

22. Males are advanced to higher positions on the salary schedules, while females, including Plaintiffs, do not receive such favorable treatment. Defendants manipulate salary schedule placement in such a manner as to provide males with more salary and benefits for doing comparable jobs as females, including Plaintiffs.

23. Upon information and belief of the Plaintiffs, their training, qualifications and experience for their positions indicated herein as comparators are at least equal to those males who are chosen and paid more for the position.

24. ACCS is governed by the State Board of Education. It consists of 22 comprehensive community colleges and four technical colleges; Athens State University; and extensive workforce development initiatives, including the Alabama Industrial Development Training Institute and the

Alabama Technology Network. Plaintiffs believe that there are thousands of other potentially similarly situated female employees who are/were employed with the Defendants and within the last three years throughout the ACCS who may wish to join in the lawsuit if notified of its existence.

25. The granting of conditional notice is not a ruling on the merits of the Plaintiffs' claims. *Grayson*, 79 F.3d 1086 (11th Cir. 1996); *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718 (11th Cir. 1987); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)(plaintiffs need not demonstrate they will prevail on the merits to obtain class certification under the more demanding requirements of Fed.R. Civ. P. 23). Any argument put forth by Defendants that deals with the merits of the Plaintiffs' claims should be disregarded by the Court at this stage (*i.e.* stage one, notice) of the lawsuit.

26. Because of the FLSA's requirement to affirmatively opt-in and because the statute of limitation does not toll for the individual until she files her opt-in consent with the court, a delay in conditional certification, i.e. court supervised notice, prejudices putative class members and benefits Defendants. Case law, recognizing a fundamental difference between Rule 23 class actions and Rule 216(b) collective actions, has also interpreted the statutory sections as requiring all plaintiffs in a collective action to file written consents for statute of limitations purposes. Signed consents filed after the filing of the complaint do not relate back to the date the complaint was filed. *Grayson*, 79 F.3d at 1106 (11th Cir. 1996).

27 In addition to all the other evidence, including the opinion of Plaintiffs' statistical expert, Plaintiffs have attached signed declarations from the Named Plaintiffs and consent to join

forms from female employees who are similarly-situated to the Named Plaintiffs[2]. *See* 29 U.S.C. § 216(b); *see Vaccaro v. Candidates on Demand*, 2008 U.S. Dist. LEXIS 29344 (S.D. Fla. 2008)(granting motion to authorize notice to potential class members where there was evidence that putative plaintiffs were similarly situated and others desired to join). As shown, many courts look to these opt-in consents as evidence on the question of whether a collective action should be conditionally certified. *Piper v. RGIS Inventory Specialists, Inc.,* 2007 WL 1690887, at *6 (N.D. Cal. 2007)(citing cases); *see Frye v. Baptist Memorial Hospital, Inc.,* 2008 WL 2117264, at *3 (W.D. Tenn. 2008), *citing Piper*, 2007 WL 1690887, at *6; Therefore, Plaintiffs filing of consent to join forms merely further demonstrates to this Court that there are other similarly situated persons who desire to join this action.

28.     Plaintiffs' Motion is more than adequately supported by the detailed allegations in the Fourth Amended Complaint, the attached Declarations of the Named Plaintiffs and consent forms filed with this Court (*Declarations* are attached to Doc. 72 as Exhibit "D" and )(*Consents* are attached to Doc.72 as Exhibit "E").

29.     The Supreme Court in *Hoffman- La Roche, Inc.,* ruled that not only did trial courts have authority to compel defendant (employers) to provide names and addresses of potential plaintiffs through the pretrial discovery process, but that this authority also included sending court-authorized consent forms to potential plaintiffs. *See Hoffman-La Roche, Inc.*, 493 U.S. 165 (1989). There, the Court addressed the issue of whether the district court may play any role on prescribing

---

[2] Conditional Certification has been granted in single opt-in plaintiff cases. *Larry Guerra v. Big Johnson Concrete Pumping, Inc.,* Case No. 05-14237 (S.D. Fla. May 17, 2006)("...the Affidavit of a [single opt-in plaintiff] shows that at least one other co-worker desires to join the suit, thereby raising the Plaintiffs contention beyond one of mere speculation.").

the terms and conditions of communication from the Named Plaintiffs to the potential members of the class on whose behalf the collective action has been brought. *See Id.*  The Court determined that district courts have discretion in appropriate cases to implement 29 U.S.C. §216(b), by facilitating notice to potential Plaintiffs. *See Id.* at 486.  This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner. *See Id.*

30. Generally, there is a two-year statute of limitations for EPA discrimination claims. A three years statute of limitations will be applied for wilful violations determined at the discretion of the court. An action for opt-in plaintiffs only begins when an employee signs a written consent to become a party and then files it with the court. *Grayson*, 79 F.3d at 1106. Therefore, an individual's own lawsuit does not start until she signs the consent and opts in. Signed consents filed after the filing of the original complaint do not relate back to the date the complaint was filed. Thus, for each employee who opts into a case after the lawsuit is filed, the action is "commenced" for limitations purposes on the date on which the employee's written consent is filed with the court. Therefore, each day that passes while notice has not been provided to potential opt-in plaintiffs in this case could cause former female employees of Defendants to lose their right to join said lawsuit. Time is of the essence. Notice to potential class members should be expedited in this matter in order for the statute of limitations for former female employees to be tolled.

31. Plaintiffs maintain that the attached proposed Notice is fair and adequate. The notice fairly informs the potential opt-in plaintiffs of the pendency of the lawsuit, that Defendants deny the allegations and, if they desire, how to opt-into the case. The Notice also advises the potential opt-ins that the Court expresses no opinion regarding the merits of the Plaintiffs' claims.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully request that this Court

13

conditionally certify this matter as a collective action and authorize notice to be sent to all female individuals who are/were employed with Defendants within the ACCS within three (3) years of the Court's Order.

Date: July 8, 2010

                                                   Respectfully Submitted,

                                                   **COUNSEL FOR THE PLAINTIFFS:**

OF COUNSEL:

                                                 /s/ Candis A. McGowan
                                                 CANDIS A. MCGOWAN

Wiggins, Childs, Qunn & Pantazis, LLC
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0513
Facsimile:  (205) 314-0713
E-mail:  cmcgowan@wcqp.com

                                               /s/ William F. Patty
                                               WILLIAM F. PATTY

James H. Anderson [AND021]
William F. Patty [PAT038]
Beers, Anderson, Jackson,
Patty & Fawal, P.C.
250 Commerce Street, Suite 100
P.O. Box 1988
Montgomery, AL  36102-1988
Telephone:  (334) 834-5311
Facsimile:   (334) 834-5362
E-mail:  BPatty@beersanderson.com

                                               /s/ Theron Stokes
                                               THERON STOKES

422 Dexter Avenue
P.O. Box 4177
Montgomery, Alabama  36103-4177
Telephone: (334) 834-9790
Facsimile: (334) 834-7034
E-mail:   therons@alaedu.org

                                      /s/ Monica L. Arrington
                                      MONICA L. ARRINGTON

P.O. Box 250091
Montgomery, AL  36125-0091
Telephone: (334) 270-2007
Facsimile: (334) 270-2720
Email: arringtonmon@aol.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this the 8th day of July, 2010, I served a copy of the above and foregoing upon the following attorneys by utilization of the CM/ECF System that notifies the attorney(s) of record.  The below listed attorney is attorney of record and registered to receive such notifications.

Robert Turner Meadows, III
Capell Howard PC
P.O. Drawer 2268
Opelika, AL  36803-2268
Telephone: 334-501-1540
Facsimile: 334-501-4512
Email: rtm@chlaw.com

                                      /s/ Candis A. McGowan
                                      Counsel for the Plaintiffs