IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PAMALON ROLLINS, SHEMEDREA JOHNSON, RENODA THOMAS, and TAMARA WARD, individually and on behalf of the class they seek to represent, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:09cv636-WHA |
| | ) | (wo) |
| ALABAMA COMMUNITY COLLEGE SYSTEM, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This cause is before the court on a Motion for Conditional Certification and Authorization to Send Notice Pursuant to the Equal Pay Act (Doc. #72), and a Motion for Class Certification (Doc. #76), filed by Pamalon Rollins ("Rollins"), Shemedrea Johnson ("Johnson"), Renoda Thomas ("Thomas"), and Tamara Ward ("Ward"), individually and on behalf of the class they seek to represent  (collectively "the Plaintiffs").

Plaintiffs Rollins, Johnson, and Thomas originally filed their Complaint in this case in the Circuit Court of Montgomery County, Alabama on May 29, 2009, alleging that they and the class they seek to represent have been discriminated against on the basis of their gender in violation of Title VII of the Civil Rights Act of 1964, as amended; the Equal Pay Act; the Fourteenth Amendment; the Alabama Constitution, and 29 U.S.C. § 206(d).

The Defendants removed the case to this court on the basis of federal question subject matter jurisdiction, the Plaintiffs having asserted claims for violations of federal statutes.

The Plaintiffs subsequently filed amended complaints, including a Fourth Amended Complaint (Doc. #63), which added Plaintiff Ward.  The Fourth Amended Complaint brings a claim in Count I entitled "Class Action-Title VII" on behalf Rollins, Johnson, and Thomas, and unnamed class members, for violation of the First and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983, Title VII, and the Equal Pay Act.  The Fourth Amended Complaint brings a claim in Count II entitled "Title VII Violations Gender-Disparate Treatment" on behalf of Rollins, Johnson, Thomas, and unnamed class members, for violations of Title VII.   Count III of the Fourth Amended Complaint is a claim for disparate impact, again asserted on behalf of Rollins, Johnson, Thomas, and unnamed class members.   Count IV is a claim by Rollins, Johnson, and Thomas entitled "Claims for Nominal, Compensatory and Punitive Damages Pursuant to 23(b)(3)."  Count V is a claim for violations of the Equal Pay Act on behalf of all Plaintiffs and unnamed class members.  Count VI is a § 1983 claim against individual Defendants for violation of the Equal Protection Clause.   Counts VII through XIV are asserted on behalf of the named individual Plaintiffs only.   Count XV is a claim for violation of policy and statutes.

The Plaintiffs subsequently moved for class certification under Rule 23 of the Federal Rules of Civil Procedure and conditional certification under the Equal Pay Act, which motions

are opposed by the Defendants.  The parties have filed voluminous briefs in support of and in opposition to these motions.[1]

For reasons to be discussed, the Motions are due to be DENIED.

## II.  FACTS

The facts as alleged in the Plaintiffs's Fourth Amended Complaint are as follows:

All of the named Plaintiffs, and the class they seek to represent, are women who are employed with various institutions alleged to be supervised and under the control of the State Board of Education, the Department of Postsecondary Education, and the Alabama College System.

The named Plaintiffs are full time employees of Defendant H. Councill Trenholm State Technical College, a two-year educational institution in Montgomery.  They include Plaintiff Pamalon Rollins ("Rollins"), who is a Director of Human Resources, who is paid according to the C-3 salary schedule; Shemedrea Johnson ("Johnson"), Director of Restricted Programs, who is paid on the C-3 salary schedule; Renoda Thomas ("Thomas"), an Account Receivables Clerk and Payroll Accountant, who is paid on the E salary schedule; and Tamara Ward ("Ward") is a Cosmetology instructor who is paid on the D-1 salary schedule.

Bradley Byrne ("Byrne") has been sued in his individual capacity as the former Chancellor of the Alabama Department of Postsecondary Education.   Byrne was Chancellor

---

[1]  In view of the Defendants' lengthy opposition briefs, the court requested reply briefs from the Plaintiffs.  The exceedingly long reply in support of class certification filed by the Plaintiff omitted page citations to most evidence cited.  The Plaintiffs subsequently moved to substitute a brief to provide those citations and to correct typographical and other mistakes.  Due to the length of the briefs, the difficulty in determining what new information has been added, and the amount of time the court has already spent reviewing the originally submitted reply, the court will not consider the newly submitted brief.

from 2007 to 2009.  Samuel Munnerlyn is sued in his individual and official capacity as President of H. Councill Trenholm State Technical College.   Some of the actions alleged in the Fourth Amended Complaint occurred during the tenure of the former President, Anthony Molina, who died in April 2007.   Fourth Amended Complaint ¶ 10.  Freida Hill has been sued in her official capacity as the current Chancellor of the Alabama Department of Postsecondary Education.  Governor Bob Riley, Randy McKinney, Betty Peters, Stephanie W. Bell, Dr. Ethel H. Hall, Ella B. Bell, David F. Byers Jr., Gary Warren, and Dr. Mary Jane Caylor also are Defendants, sued in their official capacities as officers or members of the State Board of Education.

The two-year institutions at issue in this case are governed by Alabama Community College System ("ACCS") personnel policies.   Personnel employed at the institutions are to be paid according to salary schedules adopted by the State Board of Education.  Def. Ex. F.   The Chancellor has the authority to reverse any appointment or assignment of personnel determined to be contrary to any statute, or such policies as may have been adopted by the State Board of Education.  *Id.*

The primary target for the Plaintiffs's claims is the C-3 salary schedule.  This schedule is alleged by the Plaintiffs to be for Professional Personnel and to be contained within the C schedule which consists of a C-1 schedule, with steps 0-27; the C-2 schedule, with steps 0-27; and the C-3 schedule, containing a maximum salary, but no steps.  Although the statewide C-3 has no steps, ten of the ACCS colleges have adopted local standards and criteria for placement on the C-3 salary schedule, and some have adopted local pay steps in their individual C-3 salary

schedule.  The Plaintiffs allege that the C-3 salary schedule is manipulated to provide men with

more pay for similar jobs as those being performed by women.

As stated above, two named Plaintiffs are paid on the D and E schedules.  The D salary

schedule is for full-time instructors.  All D salary schedules have steps.  The E salary schedule is

for full-time support personnel.

The Plaintiffs seek certification of a Rule 23 class, and alternative class, as follows:

[F]emale employees of Defendants hired from May 26, 2005 to present employed
at any of the 2-year colleges within the State of Alabama who were/are . . . paid
under the C Salary schedule or have been paid less than similarly situated men
who are/were paid/placed on the C salary schedule as created by Defendant
[Alabama Community College System "ACCS"], approved by Defendant State
Board of Education and implemented by the 2-year colleges within the State of
Alabama.  This class is to include any 2-year college[s]/institution[s] that are
currently operating under a local C-3 salary schedule.

Or, in the alternative, as follows:

All females who were hired to work at any of the 2-year colleges within the State
of Alabama between May 26, 2005 and the present who are or have been
adversely affected by Defendants' manipulation and illegal use of the C-3 salary
schedule to pay such female[s] less than those similarly situated males who were
hired before or after such females were hired and placed on the C-3 salary
schedule as created by the Defendants and implemented by the 2-year colleges
within the State of Alabama.  This class also includes those 2-year colleges who
are currently operating under or otherwise utilizing local C-3 salary schedules.

The Plaintiffs also seek conditional certification of a collective action under the Equal

Pay Act on behalf of all female employees.

The Plaintiffs have provided the court with the report of Edwin L. Bradley, Ph.D.,

("Bradley") who analyzes pay under the C-3 salary schedule in terms of gender.   Bradley was

asked to examine the C-3 schedule during the period from September 1, 2004 to August 31,

2010.  Bradley concluded that female employees of the ACCS paid under the C-3 schedule

average more years of service and more years of education than males paid under the C-3, but that the adjusted salary of female employees is less than their male counterparts.  Bradley states that the differences in pay as between women and men are statistically significant, adjusted for years of service, level of education, college of employment, and position title.  Plaintiffs's Exhibit 75-2 at page 3.

The Defendants oppose certification as a class, and as a collective action.  The Defendants have also provided expert testimony, as well as other evidence regarding positions and salaries at two-year educational institutions in Alabama.

### III. APPLICABLE STANDARDS

#### A. Standard for Class Certification Under Rule 23

The question of class certification is a procedural one distinct from the merits of the action.  *Garcia v. Gloor*, 618 F.2d 264 (5th Cir. 1980).[2]  In deciding whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566 (11th Cir. 1992).  Although a district court is not to determine the merits of a case at the certification stage, sometimes "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."  *Washington*, 959 F.2d at 1560 n.11.

A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Federal Rule of Civil Procedure 23 have been satisfied.  *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984).   "A class action may be maintained only when it satisfies

---

[2] In *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit.

all the requirements of Fed. R. of Civ. Pro. 23(a) and at least one of the alternative requirements of Rule 23(b)." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir. 1997).  A court must evaluate whether the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy of representation.  Furthermore, the court must determine whether the action may be maintained as one of the classes under Rule 23(b).  The party seeking to maintain the class action bears the burden of demonstrating that all prerequisites to class certification have been satisfied.  *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1363 (11th Cir. 1984).

B.  Standard for Certification of a Collective Action

District courts have discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to § 216(b) of the FLSA. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) ("The decision to create an opt-in class under § 216(b), like the decision to certify a class under Rule 23, remains soundly within the discretion of the district court").  The power to authorize notice must, however, be exercised with discretion and only in appropriate cases.  *See Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983).

## IV. <u>DISCUSSION</u>

The court will first address the Motion for Class Certification under Rule 23, and then the request for conditional certification of a collective action under the Equal Pay Act.

### Motion for Class Certification Under Rule 23

To obtain class certification, a plaintiff must demonstrate that the threshold requirements of Federal Rule of Civil Procedure 23(a), and one of the provisions of Rule 23(b) are satisfied.

A. Requirements of Rule 23(a)

The prerequisites for a class action under Rule 23(a) are that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. Pro. 23(a).   The court will examine the Rule 23(a) requirements as they apply to both the Plaintiffs' pattern and practice and disparate impact theories.

1.   Numerosity

To satisfy the numerosity requirement, the prospective class must be so numerous that joinder of the members is impractical.  Fed. R. Civ. Pro. 23(a).   The Plaintiffs state that the class they propose of females employed by the Alabama 2-year community colleges and technical colleges paid under the C salary schedule, or who have been paid less than similarly-situated men on the C salary schedule, includes 1000 employees.  The Plaintiffs further state that the alternative proposed class, namely, females at Alabama 2-year institutions who are or have been affected by the intentional use of the C-3 salary schedule to pay women less than similarly situated male employees, includes 907 employees.

The Defendants contend that the Plaintiffs cannot establish numerosity.   The Defendants state that the class consists of approximately 551 female C-3 salary schedule employees, but that these employees should not be combined because they are employed at different institutions, have different titles, and the institutions which employ them are not sufficiently centralized. While the issues pointed to are certainly relevant, particularly as to the commonality and typicality requirements of Rule 23(a), the court concludes that there is a sufficiently large

putative class identified to satisfy numerosity.  *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (stating that generally a class of 40 meets the numerosity requirement).

## 2.  Commonality

Rule 23(a) requires that there be common questions of law or fact common to the class. Fed. R. Civ. Pro. 23(a).  Although differences among class members are relevant under other Rule 23 requirements, differences among class members do not necessarily undermine commonality as long as the resolution of the common questions affects all or a substantial number of class members.  *See Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir.), *cert. denied*, 510 U.S. 991 (1993).  The Eleventh Circuit has explained that "commonality refers to the group characteristics of the class as a whole and typicality refers to the individual characteristics of the named plaintiff in relation to the class."  *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir.2000).  The Plaintiffs argue that both their disparate treatment and disparate impact claims meet the commonality standard.

The Plaintiffs state that their pattern and practice and disparate treatment claims involve a common question of law and fact.  The Plaintiffs point to the Supreme Court's description that a disparate treatment in employment claim can satisfy commonality if there is significant proof that an employer operated under a general policy of discrimination and the discrimination manifested itself in the same general fashion.  *See Gen. Tele. Co. v. Falcon*, 457 U.S. 147, 159 n.15 (1982).  The Plaintiffs state that the C-3 schedule has no steps for increase and no objective criteria for placement in the schedule and, therefore, is proof that the Defendants have the ability to operate with a policy of discrimination.  The Plaintiffs state that the completely subjective

decision making for placement on and within the C-3 schedule is used to manipulatively hire men at higher salaries and promote men more than women.  The Chancellor is charged with the responsibility of disapproving appointments which are contrary to law or State Board of Education policy.  The Plaintiffs argue that because the Chancellor has to approve or deny the decisions, there is commonality.

The Eleventh Circuit has previously determined, relying on Supreme Court precedent, that common issues can exist if there is evidence of a practice such as subjective decision making.  *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546  (11th Cir. 1986).   The employer in that case, however, was not a multi-facility employer.

The Defendants's position is that because the compensation and promotion decisions challenged in this case were made by different college presidents applying different criteria, even if the named Plaintiffs could prove they individually were subject to intentional discrimination, they cannot establish that other unnamed class members suffered the same discrimination.   The Defendants further argue that under the Eleventh Circuit's analysis in *Cooper v. Southern Co.*, 390 F.3d 695, 721 (11th Cir. 2004), *overruled on other grounds, Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006), the Plaintiffs have not established commonality.

In *Cooper*, the court reviewed a denial of certification of a class of employees at geographically dispersed locations where the decisions were made by different managers implementing different policies, and explained that to prove commonality, the named plaintiffs must demonstrate that there is a pattern and practice of discrimination or disparate impact.  *Id*. at 716.

The court agrees with the Defendants that this case should be guided by the analysis in *Cooper*.  There are, of course, factual differences between this case and *Cooper* in that the claims here  stem from one salary schedule, the C schedule, and the ultimate authority to disapprove C-3 salary schedule determinations rests with the Chancellor.  The very nature of the Plaintiffs's claims, however, is that while there is a C-3 schedule at all of the two-year institutions, the lack of any content to guide placement and promotion within the schedule means that the schedule is applied differently, with an alleged disparate effect on women.  In other words, it is the application of the policy which is at issue, and the application is not uniform.  Therefore, the court concludes that this case presents a situation, like *Cooper*, of decisions being made by different presidents at different geographically dispersed locations.  The court also cannot conclude that the limited role of the Chancellor in the decision making process, ie., disapproving personnel assignments which conflict with statutes or State Board of Education policy, satisfies commonality or sufficiently distinguishes this case from *Cooper*.[3]

Under *Cooper*, to establish a pattern and practice of disparate treatment, a plaintiff can show that intentional discrimination "was the standard operating procedure 'through a combination of statistics and anecdotes.'" *Id.* at 716 (quoting *E.E.O.C. v. Joe's Stone Crab*, 220 F.3d 1263, 1274 (11th Cir. 2000)).  Disparate impact on a class of women employees must be demonstrated with evidence of a statistically significant disparity between pay of men and women.  *Id.*

---

[3]   To the extent that the Plaintiffs are alleging that Bradley Byrne exceeded this limited role in his actions regarding named Plaintiff Rollins, the class period begins in 2004 and extends to the present time, whereas Byrne's tenure as Chancellor began and ended during the class period.  Therefore, Byrne's individual actions cannot establish commonality for the class.

In this case, the Plaintiffs seek to rely on statistical and anecdotal evidence, and have provided an expert report which concludes, based on regression analysis controlling for specific variables, that there is a statistically significant disparity in the pay of women and men on the C-3 salary schedule.

Merely because a plaintiff has provided statistics to support an inference of a pattern and practice of discrimination does not, however, mean that the court must accept those statistics in evaluating commonality. *See id*. at 721.   For example, in *Stastny v. S. Bell Tel. & Tel. Co.*, 628 F.2d 267, 280 (4th Cir. 1980), the court explained that statistical evidence designed to show that women on a statewide basis were paid less than men did not allow for an inference of a statewide pattern or practice to satisfy commonality because the individual pay decisions were subjective ones committed primarily to the individual supervisors.

In *Cooper*, the plaintiffs sought to establish a pattern and practice and disparate impact using expert statistical evidence.  390 F.2d at 721.   The court affirmed the district court's denial of class certification.  As noted earlier, the hiring, compensation, and promotion decisions were made by different managers at different companies implementing different policies.  *Id.* at 716. The Eleventh Circuit determined that the district court did not abuse its discretion in determining that the statistical and anecdotal evidence did not establish a pattern and practice or disparate impact.  *Id.* at 719.  With respect to the statistics, the district court found that the expert analysis was insufficiently tailored because it failed to take into account pertinent information such as the type or level of acquired skills or the type of an employee's experience. *Id.* at 717.

In this case, the statistical evidence offered by the Plaintiffs is in the form of a report from Bradley which compares female employees and male employees paid under the C-3

schedule, and in which he concludes that female employees have more years of service, more years of education, and have a lower adjusted salary.

The court first notes that Bradley's evidence does not address the broader class of women paid on the C salary schedule sought to be certified by the Plaintiffs, but only the alternative class, consisting of persons affected by the C-3 schedule.  The court also notes that although the Plaintiffs argue that there is a pattern and disparate impact in placement on the C-3 salary schedule, their expert only offers an opinion as to rates of pay of people paid on the C-3 schedule, not differences in selection for the C-3 schedule.  Bradley Dep. at page 113: 2-6. Bradley's evidence, therefore, does not establish commonality as all women paid on the C salary schedule, or to placement on the C-3 schedule.

With respect to statistics offered by the Plaintiffs as to rates of pay on the C-3 schedule, Bradley conducted his analysis, adjusting for salary step, education group, and college of employment.  Plaintiffs's Exhibit 1 at page 8.   Bradley analyzed the data in terms of the categories relied on in other schedules to determine what variables should be controlled for in analyzing the C-3 data.   Bradley Dep. at page 103: 13-17.

The Defendants argue that the court should not rely on the expert's conclusions to conclude that a pattern and practice or disparate impact can be proven on a common basis.  The Defendants point to evidence of information not accounted for in Bradley's analysis.  For instance, the Defendants' expert report relies on interrogatory responses that some of the colleges have different minimum and maximum salaries in the C-3 schedule.  *See* Defs' Ex. B at page 5.  The Defendants have provided the affidavit of Dr. James M. Mitchell, President of George Corley Wallace State Community College.  He states that that institution does not use

steps in the C-3 schedule, and that in setting the starting salary he considers education and experience within the job title, but not experience outside the job title. *Id.* at page 3. Interrogatory responses cited in the Defendants' evidence also indicate that Calhoun Community College and Athens State University set initial placement based in part on prior experience. Defs' Ex. B at page 6.   In his deposition, however, Bradley stated that in his analysis, all new employees at an institution would be assigned to step zero, even if they had different years of prior experience.  Bradley Dep. at page 105-06.  Bradley explained that he was not provided that data, but agreed that his model does not accurately reflect a particular school if that school considers prior experience. *Id.* at page 109: 3-11.

Bradley also calculated his own steps for the C-3 schedule based on years of service in his analysis.  Bradley Report at page 4.  Bradley does not, however, mention having controlled for difference in starting pay in evaluating the steps he applied.  He also apparently did not control for the effect that an institution's own C-3 steps would have on the analysis.  Some of the ACCS institutions use steps for the C-3 schedule, which differ from institution to institution, but some do not.  Defs' Ex. B at page 5.   In addition, the rate of pay applied at those steps differs among the institutions which have steps.  For instance, Jefferson State Community College uses a flat 2% increase each year, whereas Gadsden State Community College and Trenholm State Technical College receive specified raises at various steps. *Id.* at pages 5-6 (citing Interrog. Ex. 9).  While the Plaintiffs have argued that institutions have changed their systems within the class period, without an accounting of any difference the change may have made the court is unable to conclude that Bradley's analysis is sufficiently tailored to establish commonality.

Despite the variables not considered by Bradley, the Plaintiffs argue that the court should accept the Plaintiffs's expert's evidence because the Defendants's expert confirmed that men and women are paid at different rates on the C-3 schedule.  The Plaintiff concedes, however, that the Defendant's expert did not find statistical significance in the difference in pay between men and women.  The Plaintiffs have argued that any difference in pay is cognizable, citing cases such as *Hodgson v. Am. Bank of Commerce*, 447 F.2d 416 (5th Cir. 1971).  *Hodgson*, however, was an Equal Pay Act case, and did not analyze evidence of a pattern and practice as a theory to establish commonality.   More important, a difference that is not statistically significant is not sufficient to prove a pattern and practice of discrimination under Title VII, *see Griffin v. Carlin*, 755 F.2d 1516, 1525 (11th Cir. 1985) (stating that statistics must be "sufficiently compelling"), or disparate impact.  *See Cooper*, 390 F.3d at 716 (difference must be statistically significant").

The court has not attempted to engage in weighing expert testimony, or determining the admissibility of any expert opinions.  Such inquiry would be improper at the motion for class certification stage.  *See, e.g., LaBauve v. Olin Corp*., 231 F.R.D. 632, 666 (S.D. Ala. 2005). Instead, consistent with the analysis in *Cooper*, the court has attempted to discern whether the opinions offered by the Plaintiffs's expert are sufficiently tailored so as to establish that the identified policy of subjectivity in decision-making at the various ACCS institutions, subject to approval or disapproval by the Chancellor if in conflict with statutes or Board policy, can be proven to be a pattern and practice of discrimination, or to have a disparate impact.   Given the variables discussed which were not considered by Bradley, and which have been supported with evidence by the Defendants as being relevant to the analysis, the court cannot conclude that the

Plaintiffs have sufficiently satisfied the *Cooper* standard in supplying statistical proof of a common pattern and practice or disparate impact.

The Plaintiffs have also presented anecdotal evidence in support of class certification which relates to the experiences of four named Plaintiffs.  Anecdotal evidence standing alone cannot establish disparate impact, *see Cooper*, 390 F.3d at 716, and it is doubtful that anecdotal evidence standing alone can establish disparate treatment in any case.  *See Davis v. City of Panama City, Fla.,* 510 F. Supp. 2d 671, 689 (N.D. Fla. 2007) (stating that anecdotal evidence without statistical evidence, much less strong statistical evidence, cannot establish pattern and practice).  In this case, the anecdotal evidence relates only to the experiences of women at one two-year institution.  Therefore, the court cannot conclude that the Plaintiffs have demonstrated that a pattern and practice of discrimination can be proven through anecdotal evidence.

The court concludes, therefore, that the commonality requirement has not been met in this case.

### 3.  Typicality

Under the typicality requirement, a class representative's claims or defenses must be typical of the claims or defenses of the class.  Fed. R. Civ. P. 23 (a)(3).  In other words, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class.  *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984).  A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory.  *Id.* at 1337.

Having concluded that commonality has not been established by the Plaintiffs, the court similarly concludes that the individual named Plaintiffs, whether or not they have viable individual disparate treatment claims, have not been shown to have claims typical of unnamed class members employed through the two-year college system.  Furthermore, the statistical analysis of the institution which employs the four named Plaintiffs revealed no statistical significance in the rate of pay between men and women on the C-3 schedule.  Bradley Dep. at page 138: 14-17.  Moreover, there are additional typicality concerns in that Thomas and Ward are not paid on the C-3 schedule, and only one of those named Plaintiffs asserts a promotion claim.

The Plaintiffs contend that typicality is satisfied as to all Plaintiffs, including Thomas and Ward, because they are challenging the discriminatory practice of paying women less money than that paid to men for similar work by use and manipulation of the C-3 salary schedule.  Specifically with respect to Thomas's promotion claim, the Plaintiffs argue that even though statistics are not offered about promotions, all increases in pay are promotions, and the named Plaintiffs are representative of the class.

The significance of the difference between Thomas and Ward and members of the class who are paid on the C-3 salary schedule is apparent when examined in light of the Plaintiffs's remedy theory.  In their argument that this case should be certified as a class action under Rule 23(b)(1) and (2), the Plaintiffs contend that a single policy change can be made to institute steps in the C-3 schedule, and back pay to be awarded to each class member can be calculated easily based on the steps in the C-3 salary schedule.  People who are not currently paid on the C-3 schedule will have to establish, however, through evidence of qualifications and job

responsibilities, that they should have been placed on that schedule, before they can be assessed

back pay under the Plaintiffs's remedy theory.   In other words, Plaintiffs not paid on the C-3

schedule have claims which are not typical of class members paid on the C-3 schedule because

their entitlement to relief poses questions not posed by people already paid on the C-3.

Therefore, in addition to the fact that the Plaintiffs have failed to show that there is a

common issue of a pattern of disparate treatment or impact in payment of C-3 schedule salaries,

undermining the typicality of all named Plaintiffs, the Plaintiffs have also failed to show that

claims of named class representatives not currently paid on the C-3 schedule are typical of the

claims of the class of persons paid on the C-3 schedule.

### 4.  Adequacy

Under the adequacy of representation requirement, representative plaintiffs must fairly

and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  The adequate

representation inquiry involves questions of whether the Plaintiffs's counsel are qualified,

experienced, and generally able to conduct the proposed litigation, and of whether the Plaintiffs

have interests antagonistic to those of the rest of the class.  *Griffin v. Carlin*, 755 F.2d 1516,

1533 (11th Cir. 1985).

The Plaintiffs argue that they and their counsel will adequately represent the class or

alternative subclass because the named Plaintiffs are challenging the same unlawful conduct and

seeking the same relief as the rest of the class.

While the court is satisfied that class counsel meets the adequacy requirement, the court

has great concern about the Plaintiffs's adequacy as class representatives.  The Defendants

maintain in their opposition to class certification that the Plaintiffs are asserting compensatory

and punitive damages on behalf of the class, rendering certification under Rule 23(b)(1) and (b)(2) inappropriate.  The Plaintiffs have vehemently denied that their Fourth Amended Complaint should be interpreted to bring claims for damages on behalf of the class.  The Plaintiffs state that they are only seeking compensatory damages on behalf of the named Plaintiffs.  Tellingly, the Plaintiffs state that the unnamed class members "though they have been humiliated and [are] suffering distress, will not necessarily have an opportunity to prove such and cannot be compensated for that which is not proven."  Doc. #98 at page 134.  In the face of this position by the Plaintiffs, the Defendants state that if the Plaintiffs have abandoned the class claims for damages, they are inadequate class representatives.

The Eleventh Circuit has expressed that "to the extent the named plaintiffs were willing to forego class certification on damages in order to pursue injunctive relief that consisted of an admonition to follow general principles of settled law, it is far from clear that the named plaintiffs would adequately represent the interests of the other putative class members."  *See Cooper v. S. Co.*, 390 F.3d 695, 721 (11th Cir. 2004), *overruled on other grounds, Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006).

The unnamed class members would not "have an opportunity to prove" the humiliation and suffering the Plaintiffs state that they experienced, because of the election of their named representatives.  Furthermore, there is no opt out for a Rule 23(b)(2) class, *see Holmes v. Cont. Can Co.*, 706 F. 2d 1144 (11th Cir. 1983), so if the Plaintiffs were to prevail on their motion, those unnamed class members could not opt out to pursue damages which the named Plaintiffs are seeking for themselves.  The court concludes, therefore, that the adequacy requirement of Rule 23(a) also has not been satisfied in this case.

Having concluded that the Rule 23(a) requirements have not been satisfied, the court need not address the requests to have the class certified as a Rule 23(b)(1) and (2) case, or, alternatively, as a Rule 23(b) case.

## Motion for Collective Action

The Plaintiffs ask for an Order of Conditional Certification and for notice to be sent to "all female individuals who are/were employed with the Defendants at all of its 2-year colleges throughout the state of Alabama within three (3) years of the Court's Order." Doc. #72.  In their brief in support of certification, the Plaintiffs state both that they bring the Equal Pay Act claim on behalf of "all female employees paid pursuant to the Defendants' salary schedules," and that the Equal Pay Act claim is brought on behalf of all female employees paid pursuant to "C, D, and E" salary schedules.  *See* Doc. # 73 at pages 1-2.

Collective action treatment under §216 (b)  reflects a policy in favor of judicial economy by which "the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."  *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  Accordingly, the Eleventh Circuit has held that a district court should make certain determinations before allowing an individual plaintiff to give notice to other potential members of a collective action under the FLSA.  Specifically, "the district court should satisfy itself that there are other employees of the defendant-employer who desire to 'opt-in' and are 'similarly situated' with respect to their job requirements and with regard to their pay provisions."  *Dybach v. Fla. Dept. of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

Conditional certification of collective actions is usually examined under a fairly lenient standard, with the idea that the need for certification can be re-examined once discovery has been conducted in the case.  *See Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001).   There has, however, been discovery in this case already, so there is less need for a lenient standard.  *See White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1313 n. 2 (M.D. Ala. 2002) (Albritton, J.).   Instead, "the plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions."  *Id.* at 1314.

The Plaintiffs state that they have attached consent to join forms from female employees who are similarly situated to the named Plaintiffs.  The Defendants concede that the Plaintiffs have submitted an adequate number of notices to demonstrate that there are persons who consent to opt-in.  Doc. # 85 at page 17.

The similarly situated requirement, however, is not as easily met.  While the court should not, and does not, require the Plaintiffs to prove the merits of their case at this point in the proceedings, the court must at least be satisfied that the Plaintiffs will be able to present evidence which will support their position that other employees who consent to opt in are similarly situated.  The request for notice and certification of a collective action seeks to include "all female employees" of the 2-year institutions.  The expert evidence provided only concerns employees paid on salary schedule C-3.  *See* Pls.'s Ex. C at page 4.  Furthermore, the Plaintiffs's arguments in support of certification, while referencing "all female employees," rely on C-3 salary schedule evidence.  *See, e.g.*, Doc. # 97 at page 11.  Even viewing the evidence in light of the limitation in the Plaintiffs's brief  to female employees paid on the C, D, and E schedules, the

Plaintiffs have only presented evidence regarding two named Plaintiffs who are paid on the D and E schedules, and appear to have presented no evidence regarding women paid on the C-1 and C-2 schedules. Therefore, the Plaintiffs have not presented evidence regarding the identified group of "all female employees," or even all female employees paid on the C, D, and E schedules. The Motion is due to be DENIED on that basis alone.

Alternatively, the court notes that the limited evidence which has been submitted, that is, evidence regarding women paid on the C-3 schedule, is insufficient in light of the fact that the request for a collective action is for an Equal Pay Act claim. To establish a prima facie case under the Equal Pay Act, an employee must show that the employer pays different wages to employees of the opposite sex for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). Although formal job titles may be considered, a court must determine whether two jobs are "substantially equal" by examining the skills and qualifications needed to perform the jobs. *Miranda v. B & B Cash Grocery Store*, 975 F.2d 1518, 1533 (11th Cir. 1992).

The expert evidence presented by the Plaintiffs in this case focuses on the salaries paid to men and women, the educational level, attained years of service, and job titles of women and men paid those salaries, but does not take into account job responsibilities. While there is some general testimony from named Plaintiffs that their job duties exceed those of their comparators, the court has not been pointed by the Plaintiffs to evidence of skills and qualifications needed to perform the jobs at issue. The consent forms indicating a desire to join a collective action which have been submitted to the court by the Plaintiffs merely say that the employee has knowledge or

a good faith belief that she was paid less than men who performed work of similar skill, responsibility and effort under similar working conditions, but do not identify those job duties. The court cannot conclude from the evidence presented that there are persons similarly situated in their job duties. *See Horne v. United Services Auto Ass'n*, 279 F. Supp. 2d 1231, 1236 (M.D. Ala. 2003). The court must conclude, therefore, that in addition to certification being denied because the Plaintiffs have not presented evidence about the persons within the collective action they seek to have certified, conditional certification is also due to be DENIED on the alternative basis that the evidence which has been presented does not establish that persons who consent to opt-in to the collective action are similarly situated to the named Plaintiffs.

## IV.  CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1.  The Motion to Substitute Brief (Doc. #103) is DENIED.

2.  The Motion for Conditional Certification (Doc. #72) is DENIED.

3.  The Motion to Certify Class (Doc. #76) is DENIED.


DONE this 25th day of October, 2010.


/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE

23